UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| HEALTHIER CHOICE FLOORING, LLC, | |
| Plaintiff, | CIVIL ACTION NO. |
| v. | 1:11-CV-2504-CAP |
| CCA GLOBAL PARTNERS, INC., DALTON CARPET ONE FLOOR & HOME, and ETOWAH CARPET ONE FLOOR & HOME, | |
| Defendants. | |

**O R D E R**

This matter is before the court on the defendants' motion to dismiss the plaintiff's false advertising claims under the Lanham Act and state law [Doc. No. 83] and the plaintiff's motion for leave to file a sur-reply in opposition to the motion to dismiss [Doc. No. 112]. As an initial matter, the plaintiff's motion for sur-reply is GRANTED as unopposed. *See* LR 7.1(B), NDGa.

## I.    Factual Background

This trademark action revolves around carpet cushion (or "pad") with attributes that supposedly make it healthier to use in customers' homes. Plaintiff Healthier Choice Flooring, LLC (HCF) makes and wholesales carpet cushion that is sold in retail stores—including Costco and Home Depot— throughout the United States. HCF makes a premium carpet cushion that

1

has "healthier" properties that make it superior to other cushions. HCF uses various logos with its products, and it has a registered trademark (HEALTHIER CHOICE) that is also uses with its products.

Defendant CCA Global Partners, Inc. (CCA) is a corporation that is owned by other, independently owned and operated, individual retail floor covering companies. Defendants DCO, Inc. (doing business as Dalton Carpet One Floor and Home) and Etowah Decorating Center, Inc. are two of the independent retail floor covering stores that are members of CCA's ownership cooperative. CCA does not buy or sell carpet cushion itself; rather, it negotiates with product vendors on behalf of its retail store owners and creates marketing programs for use by its owners to sell carpet, cushion, and to provide installation services.

One such marketing program that CCA recommends to its members is its "Healthier Living Flooring Installation System" (the Healthier Living System). It involves using a multiple step process in an attempt to provide an improved option for installation of carpet. There are many elements that make up the Healthier Living System. Some of these elements address the type of carpet cushion used[1] and the process to install it.

---

[1] For example, one component of the marketing materials provides: "The carpet cushion that comes standard with our Healthier Living Carpet Installation System is anything but standard. Our antimicrobial premium carpet cushion

2

HCF's amended complaint alleges CCA's Healthier Choice System infringes on HCF's trademark rights and falsely advertises the certain attributes of the Healthier Choice System and its carpet cushion. In particular, HCF alleges the advertising at issue references the purported "healthier," moisture resistant, antimicrobial, and other properties that allegedly help consumers to "breathe easier"—all of which HCF contends are unsubstantiated and false. Some of the Healthier Living System advertising materials includes the phrase "Make The Healthier Choice" on the same page as a description of the attributes of the accompanying carpet cushion.[2]

After the court permitted HCF to amend its complaint, the defendants moved to dismiss the new false advertising claims. Principally, the defendants argue that HCF lacks prudential standing to bring the false advertising claims. Second, the defendants argue the statements made concerning the Healthier Living System's "healthier" properties or how it allows consumers to "breathe easier" are non-actionable puffery under the Lanham Act.

---

goes above and beyond ordinary cushions to offer an abundance of environmental and health benefits for you and your home." *See* [Doc. No. 83, at 7].

[2] *E.g.*, [Doc. No. 1-16, at 1] (stating in a left panel, "Compare Healthier Living To Standard Installations And make the healthier choice," and comparing, in a right panel, "Ordinary Cushion" to the Healthier Living™ Installation's "AntiMicrobial Premium Carpet Cushion"); *id.* at 3 (instructing readers to "Review The Installation Health Check And Make The Healthier Choice" and comparing ordinary cushion to cushion used in the Healthier Living Installation).

## II.    Legal Standard

In ruling on a motion to dismiss, the court must accept the facts pleaded in the complaint as true and construe them in the light most favorable to the plaintiff. *See Linder v. Portocarrero*, 963 F.2d 332, 334 (11th Cir. 1992). Legal conclusions or mere conclusory statements, however, enjoy no such presumption of truth. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In order to survive a motion to dismiss for failure to state a claim,[3] a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

## III.   Analysis

### A.    Prudential Standing

Although the defendants argue only that the plaintiff lacks prudential standing, the court must first briefly address the plaintiff's constitutional standing to bring its false advertising claims. *See Phoenix of Broward, Inc. v. McDonald's Corp.*, 489 F.3d 1156, 1161 (11th Cir. 2007) (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 91–93 (1998)). Article III standing has three elements: injury, causation, and redressability. *Id.* Here, HCF alleges it has been injured in the form of lost sales and harm to its reputation by CCA's false advertising of the Healthier Living System. HCF's prayer for relief asks

---

[3] The court construes the portion of the motion addressing the non-actionable nature of the defendants' statements as made pursuant to Fed. R. Civ. P. 12(b)(6).

for an injunction of the defendants' false advertising, damages for its lost

sales, and disgorgement of the defendants' profits. These forms of relief could

redress HCF's injuries. Therefore, the court finds HCF has constitutional

standing.

The Eleventh Circuit has adopted a multi-factor test to determine

standing for a false advertising case.

> [T]o determine whether a party has prudential standing to bring
> a false advertising claim under § 43(a) of the Lanham Act, a court
> should consider and weigh the following factors:
>
> (1) The nature of the plaintiff's alleged injury: Is the injury of a
> type that Congress sought to redress in providing a private
> remedy for violations of the Lanham Act?
>
> (2) The directness or indirectness of the asserted injury.
>
> (3) The proximity or remoteness of the party to the alleged
> injurious conduct.
>
> (4) The speculativeness of the damages claim.
>
> (5) The risk of duplicative damages or complexity in
> apportioning damages.

*Phoenix of Broward*, 489 F.3d at 1163–64. In adopting this test, the Eleventh

Circuit emphasized the test's "flexibility in application to address factually

disparate scenarios." Id. at 1167. It also noted the test is "designed to

determine whether the injury alleged is the type of injury that the Lanham

Act was designed to redress—harm to the plaintiff's 'ability to compete' in the

marketplace and erosion of the plaintiff's 'good will and reputation' that has been directly and proximately caused by the defendant's false advertising." *Id.*

Analyzing these factors, the court finds HCF satisfies enough of them to have standing to bring its false advertising claims.

### Factor 1 — Type of Injury

The defendants do not specifically address this factor, but the court concludes it favors the plaintiff's standing. An allegation that the plaintiff's "'commercial interests' were 'harmed by a competitor's false advertising' . . . is the type of harm the Lanham Act was intended to redress." *Id.* at 1168. HCF alleges the defendants are making false statements about the health benefits of their carpet cushion and system, and it alleges it has lost sales and suffered reputational harm in the form of a "false association" between the defendants and "the products promoted and sold by HCF." Am. Compl. ¶ 110 [Doc. No. 70]. Thus, this factor weighs in favor of standing.

### Factor 2 — Directness of Injury

The defendants frame the plaintiff's allegations like this:

> 1) defendants falsely advertised the properties of the Healthier Living® Flooring Installation System and its components, 2) as a result of these false statements, "customers" . . . were encouraged to patronize unspecified independent retail stores somewhere in the country that are members of the Carpet One co-operative or patronize different cushion manufacturers, and 3) but for the

misrepresentation, those "customers" would have otherwise
purchased products from Healthier Choice.

Mot. to Dismiss 11–12 [Doc. No. 83]. They claim this "tenuous" effect is

"virtually identical to the causal chain of events" in *Phoenix of Broward*.

In *Phoenix of Broward*, a number of Burger King franchisees sued

McDonald's in connection with the purported lost sales they suffered as a

result of McDonald's alleged misrepresentations about consumers' chances of

winning its Monopoly promotional game. The court stated that this factor

"weighs in favor of standing in cases where 'one competitor directly injures

another by making false statements about its own goods and thus influences

customers to buy its product instead of the competitor's product.'" *Phoenix of

Broward*, 489 F.3d at 1169 (quoting *Logan v. Burgers Ozark Country Cured

Hams Inc.*, 263 F.3d 447, 460 (5th Cir. 2001)). It then characterized the

causal chain as more attenuated than the "typical" false advertising claim:

> Phoenix essentially alleges that (1) McDonald's advertisements
> falsely represented that customers had a fair and equal chance to
> win one of the 'rare' high-value prizes if those customers
> patronized McDonald's restaurants and played its games; (2) as a
> direct result of the misrepresentation regarding the high-value
> prizes, McDonald's lured customers who would have eaten at
> Burger King (as opposed to one of numerous other fast food
> competitors), causing Burger King to lose sales; and (3) but for
> this misrepresentation, these customers would have eaten at
> Burger King, even though the chances of winning one of the 'rare'
> high-value prizes would have been minute had there been no
> theft, even though only 'certain' high-value prizes were stolen,

and even though these customers still had a fair and equal
opportunity to win all of the other prizes.

*Id.* The court concluded that the chain linking McDonald's representations

"about one aspect of its promotional games to a decrease in Burger King's

sales" was too tenuous to support the franchisees' standing.

The court here concludes the second factor favors standing. Even

accepting the defendants' characterization of the causal chain of events, there

is an important difference between this case and *Phoenix*: The alleged

misrepresentations here go to the core of the products or services in question,

rather than an ancillary marketing promotion. Phoenix of Broward's false

statements revolved around a customer's chances of winning a promotional

game; here the defendants' allegedly false statements concern the "healthier"

qualities of its system and carpet cushion. Thus, the directness of the injury

to the plaintiff, also provider of "healthier" carpet cushions, is much greater

than when the injury results from a gimmick game to get customers in the

door.

### Factor 3 — Proximity of Allegedly Harmful Conduct

"In examining this factor, we must determine whether there is an

'identifiable class' of persons 'whose self-interest would normally motivate

them to vindicate the public interest' by bringing a suit." *Phoenix of Broward*,

489 F.3d at 1170 (noting courts generally evaluate whether another

commercial entity is the more appropriate party to vindicate the competitive harm). The defendants (in a somewhat conclusory fashion) contend there are "numerous commercial entities that are on the same retail level as the [defendant] Carpet One stores and no 'competitive' commercial entities on the same level as [defendant] CCA Global—an entity that does not buy or sell flooring products." Mot. to Dismiss 12–13 [Doc. No. 83]. In response, Healthier Choice argues the defendants essentially view the test from the wrong direction: "The true 'proximity' test is whether other potential plaintiffs were more proximate to the injury and thus better suited to assert the false advertising claims—not whether another defendant would be the better party to sue. Resp. in Opp'n 14 [Doc. No. 96]. Rather, Healthier Choice contends it is "the only carpet cushion manufacturer that specifically touts [its] 'healthier' claims and that is alluded to in defendants' advertising materials." *Id.*

The court cannot find this factor weighs against standing. The court agrees that the defendants focus on the wrong end of the equation. What the defendants should have attempted to identify for the court is another potential plaintiff or class of plaintiffs that might be in a better position to vindicate the supposed harm of the alleged false advertising, as compared to Healthier Choice. *See Phoenix of Broward*, 489 F.3d at 1170 ("The existence

of such a class diminishes the justification for allowing a more remote party [to sue]." (quoting *Joint Stock Soc'y v. UDV N. Am., Inc.*, 266 F.3d 164, 182 (3d Cir. 2001))). Instead, at best, the plaintiff essentially argues there are "numerous commercial entities" that might have the same interest as the plaintiff here. If the plaintiff's argument were correct, then the existence of multiple, equally appropriate plaintiffs would essentially rule out any of them having prudential standing in a false advertising action. This cannot be right. Moreover, the defendants have identified no such alternative class of plaintiffs. Thus, at worst, this factor is neutral to prudential standing, even if the plaintiff is not the "only" manufacturer that sells its carpet cushion based on supposed healthier qualities.

### Factor 4 — Speculative Nature of Alleged Damages

The defendants argue the plaintiff's alleged damages are too speculative because there are too many competitors in the carpet cushion market, both on the manufacturing and retailing ends of the supply chain. Thus, "apportionment of damages to the purported false advertising, particularly in light of the fact that the advertising makes no reference to Healthier Choice, is grossly speculative and does not support standing." Mot. to Dismiss 13 [Doc. No. 83]. The defendants also contend the plaintiffs cannot rely on disgorgement of profits in order to show the calculable nature of their

damages. The court in *Phoenix of Broward* agreed with this last point and rejected that plaintiff's argument that disgorgement of the defendant's profits could satisfy the fourth factor if the plaintiff's direct damages were otherwise incalculable. 489 F.3d at 1172 ("Phoenix may not bolster its 'case for prudential standing by relying on forms of monetary relief that [it] would receive as a vicarious avenger of the general public's right to be protected against . . . false advertisements.'"). Thus, the court only addresses the plaintiff's other damages claims.

In response, the plaintiff contends it has "pled the existence of actual confusion and actual lost sales (based on evidence adduced through pre-amendment discovery)" as its damages (in additional to seeking CCA's profits). And, the plaintiff has pled facts that, assumed true, would tend to lead to lost sales. Am. Compl. ¶¶ 69, 71–72, 108; *see also id.* ¶ 110 (alleging the false advertising contributes to "false association" between the defendants' and the plaintiff's product). The defendants argue these damage allegations are untrue based on deposition testimony of one of the plaintiff's employees, but the defendants do not explain how such testimony is relevant in the posture of a motion to dismiss. Accordingly, the court finds this factor weighs in favor of standing. *Cf. Phoenix of Broward*, 489 F.3d at 1171 ("In our view, it requires too much speculation to conclude that an ascertainable

percentage of both the increase in McDonald's sales and the concomitant decrease in Burger King's sales during the several-year run of the games is directly attributable to McDonald's alleged misrepresentations about the chances of winning high-value prizes.").

*Factor 5 — Risk of Duplicative Damages*

Finally, the last factor "requires us to assess the risk of duplicative damages or the complexity of apportioning damages." *Id.* at 1172. In *Phoenix of Broward*, the numerosity of potential claimants and variations of damages to be apportioned greatly concerned the court:

> If we were to hold that Phoenix has prudential standing to bring the instant claim, then every fast food competitor of McDonald's asserting that its sales had fallen by any amount during the relevant time period would also have prudential standing to bring such a claim. And if every fast food competitor had standing to bring such a claim, regardless of the amount in controversy, regardless of the amount of lost sales or market share directly attributable to the falsity of the advertisement, and regardless of the impact on the competitor's goodwill or reputation (as the advertisements made no mention of any competitor), the impact on the federal courts would be substantial. Furthermore, apportioning damages among these competitors would be a highly complex endeavor.

*Id. See also Natural Answers, Inc. v. SmithKline Beecham Corp.*, 529 F.3d 1325, 1332 (11th Cir. 2008) ("[I]f Natural Answers has prudential standing to bring this claim, then any company that ever had, will have, or, possibly, may

have a smoking cessation product whose associated trademark could potentially be "weakened' would have prudential standing.").

Neither party has provided an assessment or argument of the risk of duplicative damages or the complexity of apportioning damages in this case that satisfies the court. It appears to be a difficult question, and the more extreme facts in *Phoenix of Broward* and *Natural Answers* made them easier cases in which to conclude this factor weighed against standing. However, the court believes the defendants overestimate the number of potential plaintiffs. Carpet cushion manufacturers that do not tout their product's "healthier" qualities (whether using that term or not) might not themselves have prudential standing due to the existence of a better class of plaintiffs— namely, those that do have healthier cushions. On the other hand, the court cannot say how large even this reduced group of plaintiffs might be. Thus, for the purpose of this motion, the court will assume the group is large enough to present a risk of duplicative damages and to conclude this factor weighs against standing.

### *Weighing the Factors*

The court has concluded four of the five factors weigh in favor of prudential standing. Even assuming the risk of duplicative damages or difficulty in apportioning damages weighs against Healthier Choice's

13

standing, it is not so heavy as to override the weight of the other four factors combined. Therefore, the court holds Healthier Choice has prudential standing to bring its false advertising claims against the defendants.

### B.    Puffery

Additionally, the defendants move to dismiss the false advertising claims to the extent that some of the alleged false statements are puffery. Specifically, the defendants argue the advertising statements that describe the Healthier Living system as "healthier" and that it will allow people to "breath easier" or "breath a little easier" are non-actionable.

The first element of a Lanham Act false advertising claim is that the "ads of the opposing party were false or misleading." *Osmose, Inc. v. Viance, LLC*, 612 F.3d 1298, 1308 (11th Cir. 2010). The parties agree that statements of opinion generally are not actionable. *See, e.g.*, *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 246 (9th Cir. 1990) ("Advertising which merely states in general terms that one product is superior is not actionable." (internal quotation marks omitted)); *Atlanta Allergy & Asthma Clinic, P.A. v. Allergy & Asthma of Atlanta, LLC*, 685 F. Supp. 2d 1360, 1380 (N.D. Ga. 2010) (holding description of the defendant as a "premier" treatment facility was "vague and subjective and constitutes non-actionable puffing").

14

However, the line between mere statements of opinion or superiority and fact is often not clear. The court evaluates the advertisement's message "in full context" and "must view the face of the statement in its entirety." *Osmose*, 612 F.3d at 1308, 1311 (emphasizing "the importance of context when analyzing false advertising claims"). In context of the surrounding text, even statements that read like opinions can be "reasonably interpreted as more than subjective statements regarding the efficacy or superiority of a product" if they can be "fairly impl[y]" an objective basis." *Id.* at 1311.

In isolation, the "healthier" and "breathe easier" statements would constitute classic puffing; but in context, they are actionable. One example advertisement illustrates the reason the statements are not mere statements of opinion:

- "Healthier Living Flooring Installation System" is displayed at the top of a page;

- the text "The prescription For A healthier home" is centered on the page above the image of a medical stethoscope;

- the lower-left panel contains the heading, "Protect Your Investment, And The Health Of Your Family, With Our Antimicrobial Cushion";

- some of the bullets under that heading describe the carpet cushion[4] as "minimiz[ing] symptoms from: mold and mildew, microorganisms, dust, allergens, and pollen" and "Hypo-allergenic";

- at the bottom-left is the statement, "With SpillBloc and BioShield your Healthier Living Carpet Cushion is protected against odors, microorganisms, dust, allergens, and pollens";

- the right column contains the statements, "Your family breathes easier. The planet breathes easier. We all win with . . .BioShield . . . [and] Spill Bloc";

- BioShield is described as an "[a]ntimicrobial treatment [that] inhibits the growth of mold, mildew, and odor-causing bacteria, which makes your home a safer place to live."

Ex. Q to Am. Compl. [Doc. No. 70-3].

The context in which the "healthier" and "breathe easier" claims are made makes specific claims related to air quality and health benefits obtained by using the Healthier Living system and its carpet cushion. According to the advertisement, the carpet cushion is antimicrobial, inhibits

---

[4] In some instances, CCA has attempted to distinguish itself from HCF as the promoter of the "flooring installation system." While it is true that CCA's system contains multiple elements, more than one of which CCA contends adds to the "healthier" aspects of the installation, this particular exhibit and description is referring only to the cushion component: the heading above the bullets and the graphics below both refer to the cushion used, not the system as a whole.

the growth of mold, mildew, and bacteria, and protects against microorganisms (like bacteria), allergens, and pollens. These attributes supposedly contribute to the health of the consumer's family. Each of contextual statements could be verified; thus, they imply an objective basis for the "healthier" qualities of the cushion and an objective basis to explain to consumers why or how they will "breathe easier" if they purchase the defendants' cushion. Accordingly, the claims cross the line from mere puffery into statements that can be actionable under the Lanham Act.

## IV.   Conclusion

In sum, the court concludes the plaintiff has prudential standing to bring its false advertising claims. Additionally, the "healthier" and "breathe easier" statements are actionable under the Lanham Act. Therefore, the defendants' motion to dismiss [Doc. No. 83] is DENIED. The plaintiff's motion for leave to file a sur-reply [Doc. No. 112] is GRANTED.

**SO ORDERED** this 5th day of March, 2013.


/s/ Charles A. Pannell, Jr.
CHARLES A. PANNELL, JR.
United States District Judge

17