UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

HEALTHIER CHOICE FLOORING,
LLC,

            Plaintiff,

      v.

CCA GLOBAL PARTNERS, INC.,
DALTON CARPET ONE FLOOR &
HOME, and ETOWAH CARPET
ONE FLOOR & HOME,

            Defendants.

CIVIL ACTION NO.

1:11-CV-2504-CAP

# **O R D E R**

This matter is before the court on Healthier Choice Flooring, LLC's ("HCF") motion to exclude expert testimony of Donald A. Irwin [Doc. No. 216], HCF's motion for leave to file under Federal Rules of Civil Procedure 15(a)(2) and 16(b)(4) to amend the amended complaint and remove certain counts [Doc. No. 272], HCF's motion for partial summary judgment [Doc. No. 278], CCA Global Partners, Inc.'s ("CCA") motion for summary judgment [Doc. No. 279], DCO, Inc. ("DCO") and Etowah Decorating Center, Inc.'s ("Etowah") motion for summary judgment [Doc. No. 280], and the defendants' motion to exclude the expert testimony of Michael Norton [Doc. No. 281].

As an initial matter, the court GRANTS the motion to amend the complaint [Doc. No. 272].  The motion seeks merely to dismiss with prejudice certain of the plaintiff's claims.  The defendants have no objection.  Because the amendment does not add claims, the court will not require the filing of a second amended complaint.  Rather, the court will simply dismiss the claims identified in the motion to amend and continue the litigation with the amended complaint being the operative pleading.  Therefore, counts II, III, VI, VIII, and IX are DISMISSED WITH PREJUDICE.

The parties filed their motions for summary judgment prior to the court ruling on HCF's motion to amend the amended complaint.  To the extent that the parties seek summary judgment on the counts of the amended complaint that have now been dismissed with prejudice, the court will not address those arguments.

## I.    Factual and Procedural History

This trademark action concerns carpet cushion with attributes that supposedly make it healthier to use in customers' homes.  HCF makes and wholesales carpet cushion that is sold in retail stores—including Costco and Home Depot—throughout the United States.  HCF makes a premium carpet cushion that has "healthier" properties that it claims make it superior to

other cushions.  HCF uses various logos with its products, including the registered trademark Healthier Choice®.

CCA is a corporation that is owned by other, independently owned and operated, individual retail floor covering companies.  DCO (doing business as Dalton Carpet One Floor and Home) and Etowah are two of the independent retail floor covering stores that are members of CCA's ownership cooperative. CCA does not buy or sell carpet cushion itself; rather, it negotiates with product vendors on behalf of its retail store owners and creates marketing programs for use by its owners to sell carpet and cushion, and to provide installation services.

A marketing program that CCA recommends to its members is its "Healthier Living® Flooring Installation System" (hereinafter "the Healthier Living® System").  It involves using a multiple step process in an attempt to provide an improved option for installation of carpet.  There are many elements that make up the Healthier Living® System, such as the type of carpet cushion used and the process to install it.

For purposes of this order, the operative complaint is HCF's amended complaint filed on June 18, 2012.  The amended complaint alleges that CCA's Healthier Living® System infringes on HCF's trademark rights and falsely

advertises certain attributes of the Healthier Living® System and its carpet cushion.  HCF sets forth the following claims in its amended complaint:

- Count I: Federal trademark infringement under 15 U.S.C. § 1114,

- Count IV: Federal trade dress infringement under 15 U.S.C. § 1125(a),

- Count V: False advertising under 15 U.S.C. § 1125(a),

- Count VII: Trademark dilution under O.C.G.A. § 10-1-451(b),

- Count X: Attorney's fees and expenses of litigation.

The defendants filed the following counterclaims in response to the amended complaint:

- Counterclaim I: Declaratory judgment of non-infringement,

- Counterclaim II: Declaratory judgment of no dilution,

- Counterclaim III: Federal trademark infringement under 15 U.S.C. § 1125,

- Counterclaim IV: Common law trademark infringement,

- Counterclaim V: Fraud on the United States Patent and Trademark Office under 15 U.S.C. § 1120.

## II.    Motions to Exclude Expert Testimony

The parties have filed two separate motions to exclude the testimony of two witnesses designated as experts.  HCF seeks to exclude the expert

testimony of Donald A. Irwin.  The defendants seek to exclude the expert

testimony of Michael Norton.

The Eleventh Circuit Court of Appeals has held that a district court

must act as a "gatekeeper" under Federal Rule of Evidence 702 and *Daubert*

*v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) to admit only

expert testimony that is both reliable and relevant.  *Rink v. Cheminova, Inc.*,

400 F.3d 1286, 1291 (11th Cir. 2005).  To perform this role as "gatekeeper,"

the court must determine whether the following requirements are met:

> (1) the expert is qualified to testify competently regarding the
> matters he intends to address; (2) the methodology by which the
> expert reaches his conclusions is sufficiently reliable as
> determined by the sort of inquiry mandated in *Daubert*; and
> (3) the testimony assists the trier of fact, through the application
> of scientific, technical, or specialized expertise, to understand the
> evidence or to determine a fact in issue.

*City of Tuscaloosa v. Harcross Chems., Inc.*, 158 F.3d 548, 562 (11th Cir.

1998).  The court of appeals has held, "[A]lthough there is some overlap

among the inquiries into an expert's qualifications, the reliability of his

proffered opinion and the helpfulness of that opinion, these are distinct

concepts that courts and litigants must take care not to conflate."  *Quiet Tech.*

*DC-8 v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1341 (11th Cir. 2003).  The

burden of proof lies with the party offering the expert to show by a

preponderance of the evidence that each of the elements has been satisfied. *Rink*, 400 F.3d at 1292.

### A. Expert Testimony of Donald A. Irwin

HCF asserts a claim in the amended complaint for false advertising under 15 U.S.C. § 1125(a).  HCF alleges that the defendants have made claims in their marketing and advertising regarding the moisture resistance of carpet cushions that are literally false or misleading.  To defend against the false advertising claim, the defendants retained Irwin to supervise testing concerning the moisture resistance of the carpet cushion component of the Healthier Living® Flooring Installation System, and to evaluate tests disclosed by HCF's expert.  Irwin has since conducted laboratory testing regarding the moisture resistance of the defendants' carpet cushions.  In addition, the defendants have served an expert report completed by Irwin in connection with his testing and evaluation of the moisture resistance of the carpet cushions.  HCF moves to exclude the expert testimony of Irwin because his testimony does not meet the requirements set forth in Federal Rule of Evidence 702 and *Daubert*.  HCF argues that the defendants cannot meet their burden with respect to the requirements set forth above.

### 1.   Expert Qualifications

The first requirement under the court's analysis is that the expert witness must be qualified to testify competently on the matters he intends to address.  "Federal Rule of Evidence 702 takes a liberal view of expert witness qualifications." *Leathers v. Pfizer, Inc.*, 233 F.R.D. 687, 692 (N.D. Ga. 2006).  An expert witness must be "competent and qualified by knowledge, skill, experience, training, or education to render the opinion." *Id.*  Accordingly, "an expert's training does not always need to be narrowly tailored to match the exact point of dispute in a case." *McGee v. Evenflo Co.*, No. 5:02-cv-259-4 (CAR), 2003 WL 23350439, at *3 (M.D. Ga. Dec. 11, 2003) (concluding that a mechanical engineer with some experience involving accident reconstruction and safety restraints was minimally qualified to testify about the performance of a car seat in an accident).  Generally, any gaps in an expert's qualifications or knowledge affect the weight of the witness's testimony, not the admissibility of the witness's testimony. *Trilink Saw Chain, LLC v. Blount, Inc.*, 583 F. Supp. 2d 1293, 1304 (N.D. Ga. 2008)

With respect to this requirement, HCF argues that Irwin's expert report does not disclose any background, education, or training regarding the testing that is the subject of his opinions.  HCF notes that the defendants have failed to identify any instance of Irwin's having performed or supervised

a moisture barrier test prior to this litigation. HCF's position is that Irwin has generalized knowledge regarding the flooring industry at best, which it contends is not sufficient to satisfy the first requirement.

Irwin states in his expert report that he has been asked to provide the following in this matter: (1) his opinion concerning certain tests selected by HCF and a disclosure from Michael Norton and (2) to supervise and analyze testing of certain cushion samples. Expert Report of Irwin ¶ 1 [Doc. No. 216-2]. Irwin's summary of his experience and the background provided in his expert report reveal that he has a bachelor's degree in chemistry and a master's degree in organic chemistry. He has worked within the field of polymer chemistry for more than 50 years.[1] During the course of his work experience, Irwin has been involved in the development and marketing of attached polyurethane carpet cushion and polyurethane membranes for roofing applications. He has also provided consulting services related to the product development and manufacturing of polymer-based applications for carpet, carpet cushion, underlayment, roofing products, and synthetic turf backings. Irwin is also the named inventor for a number of patents, including one for carpet with a fluid barrier. The defendants argue that Irwin's experience confirms that he is competent and qualified to testify on

---

[1] Polymers comprise a substantial portion of the carpet cushions at issue.

the matters he intends to address.  While the defendants concede that Irwin is not a laboratory professional, they argue that he has substantial knowledge regarding the products and retained a competent testing lab to perform the actual tests—Independent Textile Testing Service, Inc.

Based on the court's review of the summary of experience and expert report provided by Irwin, the court is satisfied that he is competent to testify as an expert.  Irwin's background in the field of polymer chemistry, including the development and patent of moisture resistant membranes, qualifies him to develop, supervise, and analyze tests regarding the moisture resistance of carpet cushions.  The court concludes that Irwin is qualified to render an opinion in this case based on his background and experience.

### 2.    Methodology

The second requirement is that Irwin used a reliable methodology in reaching his conclusions.  The Eleventh Circuit Court of Appeals has held that district courts should assess the following factors—originally set forth in *Daubert*—to determine the reliability of proffered scientific testimony:

> (1) [W]hether the theory or technique "can be (and has been) tested," (2) "whether the theory or technique has been subjected to peer review and publication," (3) "in the case of a particular scientific technique, . . . the known or potential rate of error," and (4) whether the theory or technique is generally accepted by the relevant scientific community.

*Hendrix ex rel. G.P. v. Evenflo Co., Inc.*, 609 F.3d 1183, 1194 (11th Cir. 2010) (quoting *Daubert*, 509 U.S. at 592–94)).  The list of factors noted above is not exhaustive, and a district court is afforded considerable discretion when deciding how to determine the reliability of an expert.  *Id.*

The British Spill Test is a testing method commonly used to determine the effectiveness of a moisture barrier in a carpet sample.  Irwin employed a modified version of the British Spill Test to test the moisture resistance of the carpet cushions at issue in this case.  Irwin modified the British Spill Test by adding a carpet sample to the carpet cushion prior to applying the colored liquid, and then using of a standard cushion as a control and time-lapse examination of the carpet cushions.

The first factor the court considers is whether the modified British Spill Test employed by Irwin can be tested.  While there is no evidence that the technique has been tested, there is a sufficient basis for the court to find that it can be tested.  HCF touts the British Spill Test as the proper technique for testing the moisture resistance of carpet and carpet cushions.  The court does not believe the modifications to the classic British Spill Test render the technique unfit for testing.  Irwin sets forth the procedure he used to test the moisture resistance of the carpet cushions.  Therefore, the technique used by Irwin to test the moisture resistance of the carpet cushions—modified British

Spill Test—can be tested.  Contrary to HCF's classification of the modified British Spill Test as "novel," the court concludes that the first factor weighs in favor of its reliability.

Two additional factors weigh in favor of the reliability of the modified British Spill Test employed by Irwin.  While the modified British Spill Test has not been subjected to peer review and publication and no evidence has been presented to the court that the technique is generally accepted by the relevant scientific community, the classic British Spill Test satisfies both of these factors.  As discussed with respect to the previous factor, the court does not believe that Irwin's modifications to the classic British Spill Test render the technique unreliable.  Upon consideration of the factors set forth above, the court concludes that the modified British Spill Test is reliable for purposes of the Federal Rule of Evidence 702 and *Daubert* analysis.

### 3.    Assistance to the Trier of Fact

Prior to addressing the third requirement regarding the admissibility of expert testimony, the court addresses an issue raised by the defendants in response to the motion to exclude.  The defendants assert that HCF has improperly raised a new theory in its motion.  The defendants argue that HCF initially based its false advertising claim on the defendants' use of "moisture resistant" on its advertising but now allege that the issue is

11

whether the defendants properly advertise that the carpet cushions block spills or are moisture proof.  In its reply brief, HCF argues that the defendants were on notice that the operative claim was "98% moisture resistant . . . to block spills," and that this phrase includes the words "block spills."

HCF is correct that the defendants use this phrase in its advertising, but that alone does not put the defendants on notice that it is the operative claim for purposes of the false advertising cause of action.  Upon review of the amended complaint, the court concludes that it does not clearly identify "98% moisture resistant . . . to block spills" as the operative claim.  HCF does not set forth the entire phrase at any point in the amended complaint.  HCF uses only the words "moisture resistant."  Count V of the amended complaint, which sets forth a claim for false advertising under 15 U.S.C. § 1125(a), states the following:

> Defendants make certain claims in their marketing and advertising materials for the Healthier Living Flooring Installation System and/or Healthier Living Pad regarding the alleged "healthier," lower VOC-emitting, moisture resistant, and/or superior properties that extend the life of the Healthier

> Living Flooring Installation System and/or Healthier Living Pad
> that are literally false and/or misleading.

Am. Compl. ¶ 106 [Doc. No. 70].  Regarding this issue, the court concludes

that HCF put the defendants on notice that an issue with respect to the false

advertising claim is the moisture resistance of the carpet cushions.  While a

difference of degree exists between moisture resistant and moisture blocking,

the two claims fall within the broad category of moisture resistance.  The

court does not determine whether the moisture blocking properties of the

carpet cushions is an appropriate issue for trial.  The defendants may file a

properly supported motion in limine with respect to this issue should this

matter proceed to trial.

The third requirement is that the expert testimony must assist the

trier of fact to understand the evidence or to determine a fact at issue.  The

defendants argue that Irwin's expert testimony does not "fit" the issue in this

case of whether the defendants claim that the carpet cushion is "98%

moisture resistant . . . to block spills."  The defendants argue that Irwin

focuses his opinions on the faulty premise that the issue is whether the

carpet cushion is moisture resistant.  As discussed in the preceding

paragraphs, the moisture resistance of the carpet cushions is an issue in this

case.  The court concludes that the expert testimony of Irwin will assist the

trier of fact to understand the evidence related to the moisture resistance of the carpet cushions and to determine the accuracy of the defendants' advertising claims.

### 4.    Conclusion

Based on the foregoing, HCF's motion to exclude the expert testimony of Irwin [Doc. No. 216] is DENIED.

### B.    Expert Testimony of Michael Norton

HCF has retained Norton as an expert to analyze and interpret testing conducted of the antimicrobial and moisture resistance of carpet cushions sold by the defendants.  Norton has been designated as an expert witness to testify regarding these issues.  The defendants move to exclude the proposed expert testimony of Norton for failure to satisfy two requirements under Federal Rule of Evidence 702 and *Daubert*—reliability and assistance to the trier of fact.  HCF states in its response to the motion to exclude that it will not use Norton as an expert for issues relating to antimicrobial testing. Therefore, the court does not address the arguments regarding the exclusion of expert testimony on antimicrobial testing because the issue is moot.  The court addresses only the exclusion of expert testimony by Norton on the moisture resistance of the carpet cushions.

### 1.    Expert Qualifications

Norton has a degree in chemistry and has worked as a researcher and in other technical positions for more than 40 years.  Norton has been employed by HCF since January 8, 2007, and he is responsible for technical activities and for all testing conducted of HCF products.  The defendants do not challenge the background or qualifications of Norton as an expert witness.  Accordingly, the court concludes that the first requirement for Norton's testimony to qualify as expert testimony is met.

### 2.    Methodology

Norton commissioned two forms of testing to determine the moisture resistance of the defendants' carpet cushions: (1) the British Spill Test Method E (hereinafter "the British Spill Test"), and (2) the Water Penetration by Impact Test (hereinafter "the Impact Test").  These tests are designed to determine different moisture resistance properties of carpeting and carpet cushions.  Norton used these tests to determine the validity of the defendants' advertising claims regarding moisture resistance.

As discussed earlier in this order, the Eleventh Circuit Court of Appeals has held that district courts should assess certain factors—originally set forth in *Daubert*—to determine the reliability of proffered scientific testimony.  The defendants argue that Norton's testimony is inadmissible

because of the flaws in his methodology, including the following: (1) Norton prevented the defendants from inspecting the tested carpet cushions by permitting them to be destroyed, (2) Norton has never seen the cushions after the tests and cannot testify as to their condition, and (3) Norton ignores results that do not support his position.  None of the flaws alleged by the defendants relate to the four factors set forth by the court of appeals.  Rather, the court concludes that the tests used by Norton—British Spill Test and Impact Test—satisfy each of the factors set forth by the court of appeals.  The court concludes that the second requirement for Norton's testimony to qualify as expert testimony is met.

### 3.    Assistance to the Trier of Fact

The final requirement is that the expert testimony must assist the trier of fact to understand the evidence or to determine an issue of fact.  The Eleventh Circuit Court of Appeals has held, "[E]xpert testimony is admissible if it concerns matters that are beyond the understanding of the average lay person."  *United States v. Frazier*, 387 F.3d 1244, 1262 (11th Cir. 2004).

The defendants argue that Norton's testimony will not assist the trier of fact for the following reasons: (1) no expertise is required to interpret tests where the results consist of pass or fail, (2) Norton did not witness the testing, and (3) only some of the cushions marketed by the defendants were

tested.  As an initial matter, the court notes that the first argument appears disingenuous.  Despite arguing that pass or fail test results do not require expert testimony, the defendants have designated Irwin to testify regarding test results that are similar.  The test performed by Irwin indicates whether liquid penetrated the carpet cushions at six time intervals by noting either yes or no.  The use of yes or no is comparable to pass or fail.  Regardless of the propriety of the defendants' argument, the court concludes that Norton's testimony will assist the trier of fact.  Norton has been designated as an expert witness to testify regarding his analysis and interpretation of testing of the moisture resistance of carpet cushions sold by the defendants.  The moisture resistance of the carpet cushions is an issue in this case, and Norton's testimony concerns matters that are beyond the understanding of the average lay person.  Therefore, the court concludes that the third requirement for Norton to testify as an expert witness is met.

### 4.    Conclusion

Based on the foregoing, the defendants' motion to exclude the expert testimony of Norton [Doc. No. 281] is DENIED.

## III.   Motions for Summary Judgment

HCF filed a motion for partial summary judgment as to two of the counterclaims raised against it; CCA filed a motion for summary judgment as

to all claims raised against it and as to all of the counterclaims; and DCO and Etowah filed a motion for summary judgment as to all claims raised against them and as to all of the counterclaims.

## A.      Summary Judgment Standard

Rule 56(a) of the Federal Rules of Civil Procedure authorizes summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  The party seeking summary judgment bears the burden of demonstrating that no dispute as to any material fact exists.  *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 156 (1970).  The moving party's burden is discharged merely by "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support [an essential element of] the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

In determining whether the moving party has met this burden, the district court must view the evidence and all factual inferences in the light most favorable to the party opposing the motion.  *Johnson*, 74 F.3d at 1090.  Once the moving party has adequately supported its motion, the nonmovant then has the burden of showing that summary judgment is improper by coming forward with specific facts showing a genuine dispute.  *Matsushita Electrical Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

In deciding a motion for summary judgment, it is not the court's function to decide issues of material fact but to decide only whether there is such an issue to be tried. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986). The applicable substantive law will identify those facts that are material. *Id.* at 248. Facts that in good faith are disputed, but which do not resolve or affect the outcome of the case, will not preclude the entry of summary judgment as those facts are not material. *Id.* Genuine disputes are those by which the evidence is such that a reasonable jury could return a verdict for the nonmovant. *Id.* "Genuine" factual issues must have a real basis in the record. *See Matsushita*, 475 U.S. at 586. The United States Supreme Court has held the following:

> [I]n ruling on a motion for summary judgment, the judge must view the evidence presented through the prism of the substantive evidentiary burden. . . . The question here is whether a jury could reasonably find either that the plaintiff proved his case by the quality and quantity of evidence required by the governing law or that he did not. Whether a jury could reasonably find for either party, however, cannot be defined except by the criteria governing what evidence would enable the jury to find for either the plaintiff or the defendant: It makes no sense to say that a jury could reasonably find for either party without some benchmark as to what standards govern its deliberations and within what boundaries its ultimate decision must fall, and these

standards and boundaries are in fact provided by the applicable
evidentiary standards.

*Anderson*, 477 U.S. at 254–55.  "Where the record taken as a whole could not
lead a rational trier of fact to find for the non-moving party, there is no
'genuine issue for trial.'"  *Id.* at 587 (citations omitted).

### B.     HCF's Motion for Partial Summary Judgment

HCF has filed a motion for partial summary judgment with respect to
two counterclaims asserted by the defendants:[2] (1) the defendants'
counterclaim for fraud on the United States Patent and Trademark Office
("PTO") under 15 U.S.C. § 1120 (Counterclaim V) and (2) the defendants'
request for an accounting of profits in connection with their counterclaims for
trademark infringement under federal and common law (Counterclaims III
and IV).

### 1.     Fraud Counterclaim

HCF is the owner of a federal trademark registration for the word
mark Healthier Choice ("Healthier Choice® Mark"), U.S. Registration No.
3,210,413, for carpet underlay.  On March 16, 2012, HCF's president, Craig
Poteet, signed a declaration of incontestability that was eventually filed with

---

[2] HCF states in a footnote that it cannot represent that the undisputed
material facts support summary judgment on its affirmative claims [Doc.
No. 278-1 at 2 n.1].

the PTO.  A mark may become incontestable if it has been in continuous use for at least five consecutive years and other conditions are met.  15 U.S.C. § 1065.  After a mark has become incontestable, "[T]he registration shall be conclusive evidence of the validity of the registered mark and of the registration of the mark, of the registrant's ownership of the mark, and of the registrant's exclusive right to use the registered mark in commerce." 15 U.S.C. § 1115(b).

The defendants have asserted a counterclaim against HCF for fraud on the PTO under 15 U.S.C. § 1120.  HCF argues that the undisputed material facts show that the defendants cannot meet their heavy burden to prove the trademark fraud counterclaim "to the hilt" and with "no room for inference, speculation, or surmise."

### a. Legal Standard

A party may seek to have a registered mark cancelled on the ground that the registration of the mark was procured by fraud, even if the mark has become incontestable.  15 U.S.C. §§ 1064(3), 1119.  "An applicant commits fraud when he 'knowingly makes false, material misrepresentations of fact in connection with an application for a registered mark.'" *Sovereign Military Hospitaller Order of St. John v. Florida Priory*, 702 F.3d 1279, 1289 (11th Cir. 2012) (quoting *Angel Flight of Ga., Inc. v. Angel Flight Am., Inc.*, 522

F.3d 1200, 1209 (11th Cir. 2008)).  To demonstrate fraud, it must be shown that the applicant made the application for a registered mark with a purpose or intent to deceive the PTO.  *Id.*

### b. Analysis

The incontestability declaration signed by Poteet on behalf of HCF states in part: "Also, no final decision adverse to the owner's claim of ownership of such mark for those goods or services exists, or to the owner's right to register the same or to keep the same on the register; and, no proceeding involving said rights pending and not disposed of in either the U.S. Patent and Trademark Office or the courts exists."  Incontestability Decl. at 6 [Doc. No. 305-32].  With respect to the "no proceeding involving said rights" language present in the declaration, the Trademark Manual of Examining Procedure ("TMEP") states the following:

> The §15 affidavit or declaration must state that there has been no final decision adverse to the owner's claim of ownership of the mark for the goods or services, or to the owner's right to register the mark or to keep the mark on the register.  It must also state that there is no proceeding involving these rights pending in the USPTO or in a court and not finally disposed of.

TMEP § 1605.04.  The TMEP further states that the PTO "does not consider a proceeding involving the mark in which the owner is the plaintiff, where there is no counterclaim involving the owner's rights in the mark, to be a

'proceeding involving these rights' that would preclude the filing or acknowledgement of a §15 affidavit or declaration." *Id.*

The operative pleading with respect to this issue is the initial answer and counterclaim filed by the defendants on September 30, 2011 [Doc. No. 7]. In other words, the court must determine whether the answer and counterclaim involved the owner's rights such that a filing of a declaration of incontestability was precluded. The defendants asserted two counterclaims, one for a declaratory judgment of non-infringement and one for a declaratory judgment of no dilution. Within the counterclaim for a declaratory judgment of non-infringement, the defendants alleged that HCF's marks are merely descriptive, have not developed secondary meaning, are not recognized by consumers as a source indicator, and were not intended to be a source indicator.

HCF argues that only a counterclaim seeking cancellation of a trademark qualifies as a counterclaim challenging its rights.[3] The court disagrees. First, the TMEP does not use the word "cancellation" when setting forth the requirement that there be no proceeding involving the rights of the owner. If the prohibition was intended to apply only to counterclaims seeking

---

[3] HCF primarily relies on 3 McCarthy on Trademarks and Unfair Competition § 19.140 to support its argument.

cancellation, then it would include such language.  Rather, the language of

the TMEP implies a broader scope than HCF argues the court should adopt.

Second, contrary to the treatise that HCF relies on, binding precedent on this

court does not support HCF's position.  The United States Court of Appeals

for the Federal Circuit has held that a counterclaim challenging the validity

of a registered trademark qualifies as a proceeding involving the rights in the

mark.  *Sunrise Jewelry Mfg. Corp. v. Fred S.A.*, 175 F.3d 1322, 1324 (Fed.

Cir. 1999).  The court of appeals did not limit its holding to cases where a

party is seeking cancellation of a trademark.  The Eleventh Circuit Court of

Appeals has similarly interpreted the language broadly.  In a case involving a

trademark dispute, the court of appeals held that the defendant's trademark

never became incontestable because the district court proceeding qualified as

a proceeding that involved the defendant's rights in the trademark.  *Sizzler*

*Family Steak Houses v. Western Sizzlin Steak House, Inc.*, 93 F.2d 1529,

1540–41 (11th Cir. 1986).  The court of appeals characterized the complaint

as challenging the defendant's right to use "Sizzler" as a service mark and as

a trademark.  *Id.* at 1541.  The court of appeals did not indicate that the

complaint sought to cancel the defendant's trademark.  Therefore, the court

concludes as a matter of law that the phrase "no proceeding involving said

rights" is not limited to counterclaims for cancellation.

Related to the argument discussed above, HCF also argues that the defendants did not set forth an actual counterclaim involving the rights of the owner. HCF contends that the defendants sought only findings and a declaration of no liability for infringement. Once again, the court disagrees. If the court rules in favor of the defendants on their counterclaim for a declaratory judgment of non-infringement, then HCF's rights to register its mark or to keep its mark on the register would be affected. Accordingly, the court concludes as a matter of law that the defendants set forth a counterclaim challenging HCF's rights in its mark.

Having found that a proceeding involving HCF's rights in its mark was pending when Poteet signed and submitted a declaration of incontestability, the court must determine whether he knowingly made the false, material misrepresentation. The court must also determine whether Poteet acted with a purpose or intent to deceive the PTO. With respect to these issues, HCF has submitted deposition testimony and copies of emails that show that it retained the law firm of Sutherland Asbill & Brennan LLP—specifically, attorney James Johnson—as its trademark counsel to determine the propriety of filing the declaration of incontestability. Johnson concluded that it was appropriate for HCF to file the declaration of incontestability after researching the issue and reviewing the defendants' answer and

counterclaim.  Poteet testified that he relied on Johnson's legal advice, through communications with Meghan Rachford, when he signed the declaration of incontestability.  In response, the defendants argue that there is no evidence that any attorney with Sutherland Asbill & Brennan LLP directly provided the legal advice that Poteet professes to have relied on.  The defendants also cite deposition testimony by Poteet that they argue indicates his knowledge that the defendants did not believe HCF could prohibit their use of the phrase "healthier choice."  In light of Poteet's explicit testimony that he relied on counsel, and the defendants' citation to deposition testimony they contend undermines HCF's position, there is a genuine dispute of material fact on the remaining elements of the fraud counterclaim.  The court concludes that a reasonable trier of fact could find that HCF knowingly made a false, material misrepresentation of fact and it acted with the purpose or intent to deceive the PTO.  Accordingly, the court denies HCF's motion for partial summary judgment with respect to the defendants' counterclaim for trademark fraud.

## 2.   Accounting

HCF initiated this litigation by filing a complaint asserting various claims against the defendants.  HCF's federal trademark infringement and common law trademark infringement claims include allegations that CCA's

"Spill Bloc" and "BioShield" marks infringed HCF's "Moisture Bloc" and "Made with Bio Materials" marks. The defendants claimed in their answer to the amended complaint and counterclaim that CCA's marks have priority over HCF's marks. The defendants also asserted counterclaims based on allegations of infringement by HCF of CCA's marks. A party that prevails on a trademark infringement claim is entitled to three forms of monetary relief: (1) an accounting of the infringer's profits, (2) recovery of damages sustained by the plaintiff,[4] and (3) the costs of the action. 15 U.S.C. § 1117(a). HCF moves for summary judgment on the defendants' request for an accounting of profits because it contends that the defendants cannot prove any of the three predicates for such an award.

### a. Legal Standard

The Eleventh Circuit Court of Appeals has held that an accounting of profits furthers the purpose of § 35 of the Lanham Act, 15 U.S.C. § 1117, by making infringement unprofitable. *Burger King Corp. v. Mason*, 855 F.2d

---

[4] HCF states in its motion for partial summary judgment that the defendants do not seek damages for their own sales under the trademark infringement claim. Plt.'s Mem. of Law in Supp. of Mot. for Partial Summ. J. at 18 [Doc. No. 278-1]. HCF cites to two of its statements of material fact to support this position. Plt.'s Stat. of Facts ¶¶ 76–77 [Doc. No. 278-2]. The court believes that the defendants deny the statement of material fact that they do not seek damages based on their own profits. Defs.' Resp. to Plt. Stat. of Facts at 37 [Doc. No. 287-1].

779, 781 (11th Cir. 1988).  An accounting of profits is appropriate where

(1) the infringer's conduct was willful and deliberate, (2) the infringer was

unjustly enriched, or (3) an accounting is necessary to deter future conduct.

*Howard Johnson Co., Inc. v. Khimani*, 892 F.2d 1512, 1521 (11th Cir. 1990).

A party seeking an accounting of lost profits based on unjust enrichment or

deterrence is not required to show the court that the infringer acted with a

higher level of culpability.  *Burger King*, 855 F.2d at 781.

### b. Analysis

HCF relies on *Optimum Technologies, Inc. v. Home Depot U.S.A., Inc.*,

217 F. App'x 899 (11th Cir. 2007) in support of its request for summary

judgment on this issue.  In *Optimum*, the Eleventh Circuit Court of Appeals

held that the district court did not abuse its discretion in concluding that an

accounting of the defendant's profits was not an appropriate remedy.  *Id.* at

903.  HCF compares its conduct in this matter to that of the defendant in

*Optimum* and argues that there is no evidence to warrant an accounting of

its profits.

HCF states that there is no evidence that it possessed knowledge of any

possible infringement of the defendants' marks until the defendants filed the

amended answer and counterclaims.  HCF also states that it promptly took

steps to cease use of the defendants' marks in September 2012 and it no

longer uses any of the defendants' marks in its advertising or marketing materials.  In response, the defendants argue that HCF did not cease use of their marks for at least six months after it had received knowledge that it lacked priority.  The defendants also state that HCF actively sought information related to CCA's marketing program prior to initiating this matter and that HCF was in possession of marketing materials that indicate it had knowledge of the "Spill Bloc" and "BioShield" marks.

Based on the court's review of the evidence filed by the parties, the court concludes that there is a genuine dispute of material fact regarding the propriety of an accounting of profits.  The parties have pointed to evidence that supports contrasting scenarios of when HCF became aware of the "Spill Bloc" and "BioShield" marks, the manner by which it learned of the marks, and its subsequent actions.  The resolution of this factual dispute affects whether HCF acted in a manner consistent with the defendant in *Optimum*. Thus, the court denies HCF's request for summary judgment on this issue.

### 3.    Conclusion

Based on the foregoing, the court DENIES HCF's motion for partial summary judgment [Doc. No. 278].

## C.     The Defendants' Motions for Summary Judgment

The defendants have filed two separate motions for summary judgment on HCF's claims as well as their counterclaims.  CCA filed its own motion for summary judgment, while DCO and Etowah have filed a separate motion for summary judgment that incorporates by reference CCA's motion for summary judgment and memorandum.  Because the issues raised in the motions overlap, the court adjudicates the motions by addressing each claim or counterclaim rather than adjudicating the motions separately.

HCF filed a motion to amend the amended complaint after the defendants had filed their motions for summary judgment.  At the outset of this order, the court granted HCF's motion thereby dismissing counts II, III, VI, VIII, and IX of the amended complaint with prejudice.  In addition, HCF indicates in its response to the defendants' motions for summary judgment that it has dropped additional claims within the remaining counts.  The court addresses only the claims that HCF has not dropped and that have not become moot.

### 1.     Trademark Infringement

HCF has dismissed with prejudice most of its claims for trademark infringement.  However, Count I of the amended complaint still includes a claim for trademark infringement of HCF's Healthier Choice® mark.  The

defendants counterclaim I seeks a declaratory judgment of non-infringement of the Healthier Choice® mark.  The defendants move for summary judgment as to the infringement claim against them and as to the counterclaim for a declaratory judgment of non-infringement.

A trademark is "any word, name, symbol or device, or any combination thereof used to identify and distinguish one's goods from those manufactured or sold by others and to indicate the source of the goods." *Leigh v. Warner Brothers, Inc.*, 212 F.3d 1210, 1216 (11th Cir. 2000) (citing 15 U.S.C. § 1127) (internal punctuation omitted).  "In a trademark infringement action, the plaintiff must show, first, that its mark is valid and, second, that the defendant's use of the contested mark is likely to cause confusion." *Dieter v. B & H Industries of Southwest Florida, Inc.*, 880 F.2d 322, 326 (11th Cir. 1989) (citations omitted).  In addition, the infringing party must use the mark in commerce without authorization.  *Optimum Technologies, Inc. v. Henkel Consumer Adhesives, Inc.*, 496 F.3d 1231, 1242 (11th Cir. 2007).  The defendants argue that HCF cannot satisfy any of the elements necessary to prevail on its trademark infringement claim.

### a. Validity of the Mark

On March 16, 2012, HCF submitted a declaration of incontestability to the PTO.  The defendants argue that the declaration has no effect in this

matter because it was filed improperly.  As discussed in the section of this order addressing HCF's motion for partial summary judgment, the court has concluded that the defendants' response to the initial complaint included a counterclaim challenging HCF's rights in its mark.  This counterclaim was filed prior to the date HCF filed its declaration of incontestability.  This evidence is sufficient to establish that HCF was unable to satisfy each of the requirements for a declaration of incontestability at the time of its filing. Therefore, the court concludes as a matter of law that the Healthier Choice® mark is not entitled to incontestable status.

Trademark protection is available only to distinctive marks.  *Welding Services, Inc. v. Forman*, 509 F.3d 1351, 1357 (11th Cir. 2007).  Distinctive marks identify the source of the goods or services.  *Id.*  The Court of Appeals for the Eleventh Circuit has held that there are four types of distinctive marks: fanciful or arbitrary, suggestive, descriptive, and generic.  *Id.*  The parties do not argue that the phrase "healthier choice" is fanciful or arbitrary, or generic.  Instead, the parties dispute whether the phrase is suggestive or descriptive.  "A suggestive mark refers to some characteristic of the goods, but requires a leap of the imagination to get from the mark to the product [e.g., Penguin Refrigerators].  A descriptive mark identifies a characteristic or quality of the service or product [e.g., Vision Center]."  *Caliber Automotive*

*Liquidators, Inc. v. Premier Chrysler, Jeep, Dodge, LLC*, 605 F.3d 931, 938 (11th Cir. 2010).  The phrase that remains at issue is the Healthier Choice® mark used by HCF in the sale and marketing of carpet cushions.

To determine whether a mark is descriptive or suggestive, courts often apply the imagination test.  Under this test, "if a mark requires imagination, thought, and perception to arrive at the qualities or characteristics of the goods, then the mark is suggestive."  *In re Nett Designs, Inc.*, 236 F.3d 1339, 1341 (Fed. Cir. 2001).

The defendants take the position that there is no dispute that the phrase "healthier choice" is merely descriptive.  There is deposition testimony of the former vice president of sales for HCF where he answered affirmatively to the following question, "Healthier choice describes what the product is?"  Dep. of Daniel Martin, Oct. 2, 2012, at 57:14–16 [Doc. No. 302-14].  The defendants argue that the phrase "healthier choice" is a laudatory phrase that conveys information about the characteristics of the product.[5]  With respect to this issue, the Court of Appeals for the Eleventh Circuit has held,

---

[5] The defendants cite *ConAgra, Inc. v. George A. Hormel & Co.*, 784 F. Supp. 700 (D. Neb. Jan. 7, 1992), in which the district court concluded that the phrase "healthy choice" was descriptive of frozen prepared dinners.  The district court made this determination following a trial, and the district court was able to weigh the evidence unlike when dealing with a motion for summary judgment.

"'Marks that are merely laudatory and descriptive of the alleged merit of a product are . . . regarded as being descriptive. . . .  Self-laudatory or puffing marks are regarded as a condensed form of describing the character or quality of the goods.'"  *DuoProSS Meditech Corp. v. Inviro Medical Devices, Ltd.*, 695 F.3d 1247, 1256 (11th Cir. 2012) (quoting *In re Boston Beer Co.*, 198 F.3d 1370, 1373 (Fed. Cir. 2001)).  Laudatory marks extol a feature or attribute of the product.  2 McCarthy on Trademarks and Unfair Competition § 11.17.  Moreover, the defendants contend that HCF's advertising proves that the phrase is descriptive rather than suggestive.

In response, HCF argues that a trier of fact could determine that its Healthier Choice® mark is suggestive because consumers must practice "mental gymnastics to understand that it relates to carpet cushion."  Plt.'s Resp. to Mot. for Summ. J. at 11 [Doc. No. 285].  HCF cites a declaration by Poteet, the president of the company, wherein he states that end-use consumers and other individuals in the flooring industry have asked him and others in the company what the name Healthier Choice® means.  Decl. of Craig Poteet ¶ 14 [Doc. No. 303-28].  HCF also argues that market research shows that durability is an important characteristic of carpet cushion, and the phrase "healthier choice" does not address this characteristic.  Because HCF has adduced evidence from which a trier of fact could determine that

the mark is suggestive, the defendants are not entitled to summary judgment on this issue.

## b. Likelihood to Cause Confusion

To determine whether there is a likelihood of confusion between two marks, the Eleventh Circuit has developed a seven-factor inquiry.  Under this inquiry, the court must assess:

> (1) the strength of the plaintiff's mark; (2) the similarity between the plaintiff's mark and the allegedly infringing mark; (3) the similarity between the products and services offered by the plaintiff and the defendant; (4) the similarity of the sales methods; (5) the similarity of advertising methods; (6) the defendant's intent, e.g., does the defendant hope to gain competitive advantage by associating his product with the plaintiff's established mark; and (7) actual confusion.

*North American Medical Corp. v. Axiom Worldwide, Inc.*, 522 F.3d 1211, 1220 (11th Cir. 2008).  When a court considers these factors, "the type of mark [i.e., the strength] and the evidence of actual confusion are the most important." *Planetary Motion, Inc. v. Techsplosion, Inc.*, 261 F.3d 1188, 1201 n.22 (11th Cir. 2001).

### i. Strength of HCF's Mark

"The strength of a trademark is essentially a consideration of distinctiveness." *BellSouth Corp. v. Internet Classifies of Ohio*, 1:96-cv-0769-CC, 1997 WL 33107251, at *14 (N.D. Ga. Nov. 12, 1997) (citations omitted).

The stronger (i.e., the more distinctive) the mark, "the greater the scope of protection afforded it, [and] the weaker the mark, the less trademark protection it receives." *Frehling Enterprises, Inc. v. International Select Group, Inc.*, 192 F.3d 1330, 1335 (11th Cir. 1999); *see also Jellibeans, Inc. v. Skating Clubs of Georgia, Inc.*, 716 F.2d 833, 840 (11th Cir. 1983) ("[T]he more distinct the plaintiff's mark, the stronger it is considered, and the more protection it is accorded from confusingly similar marks.").

In this circuit, the factors generally considered when determining the strength of a trademark include (1) the type of mark, (2) the amount of use of the term by others in the same product and geographical area, and (3) the extent of a mark's use, taking into consideration the amount of advertising and promotion done under the mark. *Gold Kist, Inc. v. ConAgra, Inc.*, 708 F. Supp. 1291, 1297 (N.D. Ga. 1989) (citing *John H. Harland Co. v. Clarke Checks, Inc.*, 711 F.2d 966, 973–75 (11th Cir. 1983)); *BellSouth Corp.*, 1997 WL 33107251, at *14 (citing *John H. Harland Co.*, 711 F.2d at 973–75 and *Safeway Stores, Inc. v. Safeway Discount Drugs, Inc.*, 675 F.2d 1160, 1164 (11th Cir. 1982)).

As discussed in the preceding section of this order, there is a genuine dispute of material fact regarding whether HCF's Healthier Choice® mark is suggestive or descriptive. The court is unable to determine as a matter of law

the strength of the Healthier Choice® mark.  This factor weighs in favor of HCF, as the non-movant, for purposes of the defendants' motions for summary judgment.

### ii.    Similarity of the Marks

The next factor to consider in evaluating the likelihood of confusion between a set of trademarks is the degree to which they are similar.  In undertaking such an evaluation,

> "the court compares the marks at issue and considers the overall impressions that the marks create, including the sound, appearance, and manner in which they are used." . . . [T]he more similar the marks are in their sound, appearance, and manner, the more likely it is that a reasonable consumer will be confused as to the source of the product that each mark represents.

*Board of Regents of the University System of Georgia v. Buzas Baseball, Inc.*, 176 F. Supp. 2d 1338, 1352 (N.D. Ga. 2001) (quoting *Frehling*, 192 F.2d at 1337).  As a general rule, "where the goods and services are directly competitive, the degree of similarity required to prove a likelihood of confusion is less than in the case of dissimilar products."  *SunAmerica Corp. v. Sun Life Assurance Co. of Canada*, 890 F. Supp. 1559, 1575 (N.D. Ga. 1994) (citation omitted) (concluding that the marks Sun Life of America and Sun Life (U.S.) were indistinguishable and that the marks Sun Life of America and Sun Life of Canada were closely similar).

The defendants cite evidence that CCA's Healthier Living® mark is registered with the PTO.  The defendants also cite examples of its advertising that show that the Healthier Living® mark and the phrase "make the healthier choice" are often accompanied by the Carpet One Floor & Home® mark.  The defendants argue that the fact that the Healthier Living® mark and the Healthier Choice® mark have the word "healthier" in common does not render them similar in overall impression.  HCF notes that the phrase "make the healthier choice" includes HCF's Healthier Choice® mark and the capitalization is identical in some instances.  Scott Wheeler, CCA's Rule 30(b)(6) witness, has testified that he assumed that the "Healthier Choice" portion of the phrase "make the healthier choice" was styled in different color font to make that portion of the phrase stand out.  Dep. of Scott Wheeler, June 8, 2012, at 108:1–17 [Doc. No. 310-6].  HCF also cites examples of the defendants' advertising materials that show the phrase "make the healthier choice" is closer in proximity to the Healthier Living® mark than the Carpet One Floor & Home® mark.  Based on the evidence, the court concludes that a reasonable trier of fact could find that the marks are similar.  Therefore, the court concludes that the similarity of the mark weighs in favor of HCF, the non-movant.

### iii.    Similarity of the Products and Services

The third factor that the court must consider in the likelihood of confusion analysis is the similarity between HCF's and the defendants' products.  "This factor requires a determination as to whether the products are the kind that the public attributes to a single source." *Frehling*, 192 F.3d at 1338.  "The issue is not whether the purchasing public can readily distinguish between the products of the respective parties, but rather whether the products are so related in the minds of consumers that they get the sense that a single producer is likely to produce both." *Western Union Holdings, Inc. v. Eastern Union Inc.*, No. 1:06-cv-01408, 2007 WL 2683714, at *8 (N.G. Ga. Sept. 7, 2007) (citing *Frehling*, 192 F.3d at 1338).

The defendants argue that there is no overlap between CCA and HCF because CCA does not sell carpet cushion, carpet, or installation services.  This argument does not weigh on the factor of the similarity of the products and services.  HCF cites deposition testimony of Michael Blanton and Mark Saunders in which they state that defendants sell carpet cushion separately from the Healthier Living® Flooring Installation System.  Dep. of Michael Blanton, June 6, 2012, at 30:8–10 [Doc. No. 302-2]; Dep. of Mark Saunders, May 25, 2012, at 41:15–21 [Doc. No. 302-27].  The evidence establishes that HCF and the defendants sell carpet cushion.  Therefore, the court concludes

that a reasonable trier of fact could find that the products are similar.  This factor weighs in favor of HCF, the non-movant, for purposes of the defendants' motions for summary judgment.

### iv.   The Similarity of the Parties' Retail Outlets and Customers

The fourth factor "takes into consideration where, how, and to whom the parties' products are sold." *Western Union Holdings*, 2007 WL 2683714, at *9 (citing *Frehling*, 192 F.3d at 1339).  Although "the parties' outlets and customer bases need not be identical" to support a likelihood of confusion, "some degree of overlap should be present." *Frehling*, 192 F.3d at 1339.  In this case, there is evidence that HCF's and the defendants' competing carpet cushions are sold in the same stores.  There is also evidence that the parties' respective carpet cushions are sold in competing stores.  The court concludes that a reasonable trier of fact could find that the parties' retail outlets and customers are similar.  Accordingly, this factor weighs in favor of HCF, the non-movant, for purposes of the defendants' motions for summary judgment.

### v.   The Similarity of Advertising Media Used

The "similarity of advertising" factor focuses on the methods the companies use to advertise their products, "not necessarily on the precise newspapers or magazines which are used." *Gold Kist*, 708 F. Supp. at 1301.

"The greater the similarity in the campaigns, the greater the likelihood of confusion." *Ross Bicycles, Inc. v. Cycles USA, Inc.*, 765 F.2d 1502, 1508 (11th Cir. 1985). The parties agree that there is potential overlap because of the use of in-store bag samples and the internet. However, the defendants argue that CCA does not use in-store bag samples and that consumers may not purchase products from HCF's or the defendants' websites. This distinction is irrelevant. Therefore, the court concludes that a reasonable trier of fact could find that the parties' advertising is similar. As such, this factor weighs in favor of HCF, the non-movant, for purposes of the defendants' motions for summary judgment.

### vi.   Intent

The sixth factor that the court must consider in the likelihood of confusion analysis is whether the defendants acted in bad faith in using the Healthier Choice® mark. To prove that the defendants acted in bad faith, HCF must show that the defendants adopted the Healthier Choice® mark with the intention of deriving a benefit from HCF's business reputation or that the defendants were intentionally blind to confusion between the parties' marks. *Frehling*, 192 F.3d at 1340; *Board of Regents*, 176 F. Supp. 2d at 1353. HCF does not cite evidence that would support a finding that the defendants adopted the Healthier Choice® mark with the intention of

41

deriving a benefit from HCF's business reputation.  The court concludes that no reasonable trier of fact could find that the defendants acted in bad faith in using the Healthier Choice® mark.  This factor weighs in favor of the defendants for purposes of the defendants' motions for summary judgment.

### vii.    Actual Confusion

The final factor the court considers is the existence of actual confusion. "It is undisputed that evidence of actual confusion is the best evidence of likelihood of confusion." *Frehling*, 192 F.3d at 1340.  "However, such evidence is not a prerequisite, and thus it is up to individual courts to assess this factor in light of the particular facts of each case." *Id.* (citing *Amstar Corp. v. Domino's Pizza, Inc.*, 615 F.2d 252, 263 (5th Cir. 1980)).  The Eleventh Circuit Court of Appeals has explained, "[I]it is not the number of people actually confused by the marks that is important, but rather the type of person confused." *Id.* at 1341.

HCF has cited evidence of a number of instances when individuals were confused regarding the Healthier Choice® mark and the defendants' mark. The defendants challenge the admissibility of the evidence.  However, for purposes of the motions for summary judgment, the court will consider the

42

evidence.[6]  The defendants have also offered testimony of consumers that were not confused.  The court concludes that a reasonable trier of fact could find the existence of actual confusion.  Therefore, this factor weighs in favor of HCF, the non-movant, for purposes of the defendants' motions for summary judgment.

### viii.    Balancing of the Factors

The Eleventh Circuit Court of Appeals has discussed how the seven factors should be weighed and has noted that it "entails more than the mechanistic summation of the number of factors on each side."  *Custom Manufacturing and Engineering, Inc. v. Midway Services*, 508 F.3d 641, 649 (11th Cir. 2007).

> These factors imply no mathematical precision, but are simply a guide to help determine whether confusion is likely.  They are also interrelated in effect.  Each case presents its own complex set of circumstances and not all of these factors may be particularly helpful in any given case. . . .  The ultimate question remains whether relevant consumers are likely to believe that

---

[6] Although the statements about actual confusion may be hearsay, the court will consider the statements for purposes of the motion for summary judgment because it is likely that it can be reduced to admissible evidence at trial.  *See Jones v. UPS Ground Freight*, 683 F.3d 1283, 1293–94 (11th Cir. 2012).

> the products or services offered by the parties are affiliated in
> some way.

*Id.* at 650 (internal citations omitted).  In this case, one factor weighs in favor of the defendants and six factors weigh in favor of HCF.  Notably, one of the most important factors—actual confusion—weighs in favor of HCF.  Given the heavy weight in favor of the non-movant, the court concludes that it cannot enter judgment as a matter of law to the defendants on the issue of likelihood of confusion.

### c. Use of the Mark in Commerce

An additional element of a trademark infringement action is use of the mark in commerce by the infringing party without authorization.  *Optimum Techs.*, 496 F.3d at 1242.  A mark is used in commerce if "it is placed in any manner on the goods or their containers or the displays associated therewith or on the tags or labels affixed thereto, or the nature of the goods makes such placement impracticable, then on documents associated with the goods or their sale."  15 U.S.C. § 1127.  In addition, use in commerce requires that "the goods are sold or transported in commerce."  15 U.S.C. § 1127.  CCA claims that it helped develop the marketing program but that it does not use the

mark at the retail level.[7]   However, HCF has presented evidence that CCA receives money from the sale of the Healthier Living® Flooring Installation System pursuant to a master service agreement and that the suppliers are required to use advertising designed and provided by CCA.   Therefore, the court concludes that HCF has presented evidence of the relationship between CCA and its member stores such that a jury could reasonably conclude that CCA has used the mark in commerce.

### d. Fair Use

The defendants assert an affirmative defense of fair use to HCF's claim for trademark infringement.   "A fair-use defense is established if a defendant proves that its use is '(1) other than as a mark, (2) in a descriptive sense, and (3) in good faith.'"   *Int'l Stamp Art, Inc. v. U.S. Postal Serv.*, 456 F.3d 1270, 1274 (11th Cir. 2006) (quoting *EMI Catalogue P'ship v. Hill, Holliday, Connors & Cosmopulos, Inc.*, 228 F.3d 56, 64 (2d Cir. 2000)).   According to the court of appeals, "The 'fair-use' defense, in essence, forbids a trademark registrant to appropriate a descriptive term for [its] exclusive use and so prevent others from accurately describing a characteristic of their goods." *Id.* (citation omitted).

---

[7] CCA notes the exception of its website but states that it does not and cannot make any sales from its website.

HCF relies on the same evidence in support of the defendants' lack of good faith as it relied on for the bad faith portion of the confusion analysis. As set forth above in Section III.C.1.b.vi of this order, a reasonable trier of fact could find for HCF on the issue of the defendants' good faith.  However, the remaining issues present a genuine issue for trial.  HCF has cited sufficient evidence from which a reasonable trier of fact could find that the defendants used the phrase as a mark and not in a descriptive sense.  For example, the phrase "healthier choice" is set apart through the use of a different color font, capitalization, and large lettering on a few of the defendants' advertisements.  The defendants' placement of the phrase "healthier choice" could also lead a reasonable trier of fact to find that the defendants used the phrase as a mark and not in a descriptive sense.  Thus, the court concludes that a rational trier of fact could find for HCF on the defendants' fair use defense.

### e. Conclusion

The court DENIES the defendants' motions for summary judgment with respect to HCF's trademark infringement claim and the defendants' counterclaim for a declaratory judgment of non-infringement.

## 2.    Trademark Dilution

HCF has dismissed its federal dilution claim under the Lanham Act. Only a claim for dilution under O.C.G.A. § 10-1-451(b) remains. The defendants move for summary judgment on the state law dilution claim and for summary judgment on their counterclaim for a declaratory judgment of no dilution. The relevant statutory section states,

> (b) Every person, association, or union of working men adopting and using a trademark, trade name, label, or form of advertisement may proceed by action; and all courts having jurisdiction thereof shall grant injunctions to enjoin subsequent use by another of the same or any similar trademark, trade name, label, or form of advertisement if there exists a likelihood of injury to business reputation or of dilution of the distinctive quality of the trademark, trade name, label, or form of advertisement of the prior user, notwithstanding the absence of competition between the parties or of confusion as to the source of goods or services, . . .

O.C.G.A. 10-1-451(b). To prevail on a theory of dilution under this provision of the Georgia law a party does not have to prove that the trademark is famous or that the parties are in competition. *Corbitt Mfg. Co., Inc. v. GSO America, Inc.*, 197 F. Supp. 2d 1368, 1379 (S.D. Ga. 2002). The party seeking to recover must show that the asserted mark is distinctive. *Id.* "To be considered distinctive, the mark must be at least descriptive with a secondary meaning." *Id.* (citing omitted).

The defendants contend that HCF relies on a new theory of liability in response to the defendants' motion for summary judgment. The court has reviewed the pleadings and the parties' briefing and finds insufficient support for this contention.

The next issue with respect to trademark dilution is whether trademark registrations owned by the defendants for the phrase "healthier living" bar HCF's claim for dilution under O.C.G.A. § 10-1-451(b). Pursuant to 15 U.S.C. § 1125(c)(6), ownership of a valid trademark registration is a complete bar to state law causes of action brought with respect to that mark. The defendants have valid trademark registrations for the Healthier Living® mark. These valid trademark registrations bar HCF from bringing its state law dilution claim with respect to the Healthier Living® mark.

While HCF is barred from bringing a portion of its state law dilution claim, it may still assert a dilution claim for the defendants' use of the phrase "make the healthier choice." The court cannot conclude as a matter of law that a reasonable trier of fact could not find in favor of HCF on this claim. First, as discussed in the section of this order addressing the validity of the Healthier Choice® mark, there is a genuine issue for trial regarding the type of mark at issue. Second, there exists a genuine issue for trial regarding the similarity of the marks. Finally, the defendants have not shown that there is

48

no genuine dispute of material fact regarding the actual or likelihood of harm to HCF's business. Accordingly, the court grants in part and denies in part the defendants' motion for summary judgment with respect to the claim for dilution under O.C.G.A. § 10-1-451(b) and the counterclaim for a declaratory judgment of no dilution.

### 3.   Trade Dress

Section 43(a) of the Lanham Act is the statutory provision that provides for a federal cause of action for trade dress infringement. While HCF has dismissed many of its claims, it continues to assert a claim for trade dress infringement that focuses on the sample carpet cushion bag and the totality of its appearance. The defendants have moved for summary judgment on this claim. The Eleventh Circuit Court of Appeals has held, "'The term "trade dress" refers to the appearance of a product when the appearance is used to identify the producer.'" *Dippin' Dots, Inc. v. Frosty Bites Distribution, LLC*, 369 F.3d 1197, 1202 (11th Cir. 2004) (quoting *Publications Int'l, Ltd. v. Landoll, Inc.*, 164 F.3d 337, 338 (7th Cir. 1998)). The court of appeals held that three things must be proven to prevail on a claim for trade dress infringement: "(1) the product design of the two products is confusingly similar; (2) the features of the product design are primarily non-functional; and (3) the product design is inherently distinctive or has acquired secondary

49

meaning." *Id.* Each of the three elements is a threshold element because all three elements must be established to support a finding of trade dress infringement. *Id.*

The Eleventh Circuit Court of Appeals has held, "'The functionality doctrine prevents trademark law, which seeks to promote competition by protecting a firm's reputation, from instead inhibiting legitimate competition by allowing a producer to control a useful product feature.'" *Dippin' Dots, Inc.*, 369 F.3d at 1202–03 (quoting *Qualitex Co. v. Jacobson Prods. Co.*, 514 U.S. 159, 164 (1995)). "'Functional features are by definition those likely to be shared by different producers of the same product and therefore are unlikely to identify a particular producer.'" *Id.* at 1203 (quoting *Landoll*, 164 F.3d at 340). While there is not a bright line between non-functional and functional features, courts apply either the traditional test or the competitive necessity test to make this determination. *Id.* Under the traditional test, "'"a product feature is functional . . . if it is essential to the use or purpose of the article or if it affects the cost or quality of the article."'" *Id.* (quoting *TrafFix Devices, Inc. v. Mktg. Displays, Inc.*, 532 U.S. 23, 32 (2001)). Under the competitive necessity test, "'a functional feature is one the "exclusive use of [which] would put competitors at a significant non-reputation-related disadvantage."'" *Id.* (quoting *TrafFix*, 532 U.S. at 32).

HCF argues that its sample bag is non-functional because the features of the bag are not essential to its general purpose—to allow the customers to stand on the cushion samples and to receive information regarding the characteristics of the cushions.  These features include the location and font of the name, organization of the statements regarding the cushion, and the squiggly lines at the bottom of the bag.  While these features of the bag may not qualify as functional under the traditional test, the court concludes that these features qualify as functional under the competitive necessity test.  This is so because to allow HCF the exclusive use of these bag features would put competitors at a significant non-reputation-related disadvantage.  Competitors should be allowed to prominently display the name of their product across the top of the advertisement.  Competitors should also be allowed to use sans serif font, display the features of the carpet cushion in a linear display, and use squiggly lines in a display.

HCF cites language from the Eleventh Circuit Court of Appeals in which the court of appeals held, "That individual elements of packaging are function does not, however, render the package as a whole unprotectible." *AmBrit, Inc. v. Kraft, Inc.*, 812 F.2d 1531, 1538 (11th Cir. 1986).  HCF does not provide the court with any basis to conclude that the package as a whole is non-functional.  Rather, the evidence shows that the package as a whole is

functional.  Therefore, the court concludes that no reasonable trier of fact could find for HCF on the functional element of the trade dress infringement analysis.

The court does not consider the remaining two elements—likelihood of confusion and distinctiveness because HCF must satisfy each of the three elements to prevail on his claim of trade dress infringement.  Since HCF cannot satisfy the functionality element, the defendants are entitled to summary judgment on HCF's claim for trade dress infringement.

### 4.    False Advertising

The amended complaint includes a claim for false advertising pursuant to 15 U.S.C. § 1125(a).  HCF has abandoned a few of its allegations of false advertising, but it continues to allege that the defendants' claims regarding the moisture resistance and the healthier nature of the Healthier Living® carpet cushion constitute false advertising.  The Eleventh Circuit Court of Appeals has held that a claim for false advertising includes the following elements: "'(1) the ads of the opposing party were false or misleading, (2) the ads deceived, or had the capacity to deceive, consumers, (3) the deception had a material effect on purchasing decisions, (4) the misrepresented product or service affects interstate commerce, and (5) the movant has been—or is likely to be—injured as a result of the false advertising.'" *Osmose, Inc. v. Viance,*

*LLC*, 612 F.3d 1298, 1308 (11th Cir. 2010) (quoting Axiom Worldwide, 522 F.3d at 1224).

### a. Moisture Resistance

The burden in a claim for false advertising depends on whether the advertisement cites consumer testing to support a claim. *Osmose, Inc. v. Viance, LLC*, 612 F.3d 1298, 1309 (11th Cir. 2010). An advertisement claim qualifies as a "tests prove" or establishment claim through the express or implied assertion that the fact is validated by testing. *Id.* at n.6. In this case, the advertisement does not expressly state that the "98% moisture resistant . . . to block spills" claim is supported by testing. However, the use of a specific percentage implies that the claim is supported by testing. To show the literal falsity of a "tests prove" or establishment claim, "the plaintiff must prove only that the tests did not establish the proposition for which they were cited." *Id.* HCF cites evidence that the defendants do not have test results that support the moisture resistance claims of the carpet cushions. Furthermore, the parties present conflicting evidence on the tests that have been conducted. In this case, the court concludes that there is a genuine issue for trial regarding the tests performed to determine the moisture resistance of the carpet cushions. The court also concludes that there is a genuine issue for trial regarding the remaining elements of a false

advertising claim regarding the defendants' use of the phrase "98% moisture resistant . . . to block spills."  The court cannot conclude that no reasonable trier of fact could find for HCF on this claim for false advertising.

### b. Healthier

The defendants argue that the statement "healthier" is non-actionable puffery.  The defendants previously filed a motion to dismiss in which they made the same argument [Doc. No. 83].  The court concluded that the claim crossed the line of mere puffery into statements that are actionable under the Lanham Act [Doc. No. 210].  The defendants have not provided any basis for the court to reverse its earlier decision.

Unlike the previous claim, the court concludes that the "healthier" claim used in the defendants' advertising is not a "tests prove" or establishment claim.  To support the false advertising claim with respect to the defendants' use of "healthier," HCF must show that the challenged advertisement is literally false or literally true but misleading.  *Osmose*, 612 F.3d at 1308.  Based on the evidence cited by the parties, HCF has provided no evidence to establish that the advertisement is literally false or true but misleading.  Accordingly, the court grants the defendants' motion for summary judgment with respect to this issue.

### c. Standing

The court has previously held that HCF has standing to assert a claim for false advertising pursuant to 15 U.S.C. § 1125(a).  The defendants once again challenge HCF's standing to assert its false advertising claim.  The United States Supreme Court recently resolved a split among circuits concerning the proper test to determine standing to assert a claim under 15 U.S.C. § 1125(a).  *Lexmark Int'l, Inc. v Static Control Components, Inc.*, 2014 WL 1168967 (Mar. 25, 2014).  The Supreme Court declined to adopt any of the tests used by the various circuits.  *Id.* at *10.  Instead, the Supreme Court held, "[A] direct application of the zone-of-interests tests and the proximate-cause requirement supplies the relevant limits on who may sue."  *Id.*  With respect to the first test, the Supreme Court held, "[T]o come within the zone of interests in a suit for false advertising under § 1125(a), a plaintiff must allege an injury to a commercial interest in reputation or sales."  *Id.* at *9.  Under the proximate-cause test, "a plaintiff suing under § 1125(a) ordinarily must show economic or reputational injury flowing directly from the deception wrought by the defendant's advertising; and that that occurs when deception of consumers causes them to withhold trade from the plaintiff."  *Id.* at *10.  While the Supreme Court set forth a different analytical framework than previously employed in the Eleventh Circuit, this court arrives at the

same conclusion regarding standing in this case.  The court concludes that HCF meets the zone-of-interests test and the proximate-cause test.  HCF has alleged an injury to its commercial interest in reputation or sales and the harm is sufficiently close in connection to the conduct 15 U.S.C. § 1125(a) prohibits.  Therefore, HCF has standing to assert a claim for false advertising pursuant to 15 U.S.C. § 1125(a).

## 5.   Fraud on the PTO

The defendants have alleged that HCF made false representations to the PTO when it filed a declaration of incontestability.  The defendants move for summary judgment on this counterclaim.  As discussed previously, HCF has also moved for summary judgment on this claim.  The court addressed this portion of HCF's motion for summary judgment in Section III.B.1 of this order.  The court denies the defendants' motion for summary judgment for the reasons discussed in Section III.B.1.

## 6.   Infringement Counterclaims

The defendants move for summary judgment on their trademark counterclaims for infringement pursuant to 15 U.S.C. § 1125(a) and the common law.  The defendants' trademark counterclaims concern claims for which HCF initially asserted trademark infringement.  HCF has withdrawn its trademark claims concerning "Spill Bloc" and "BioShield."  HCF concedes

that it initially asserted that there is a likelihood of confusion between its

"Moisture Bloc" and "Made with Bio Materials" marks and CCA's "Spill Bloc"

and "BioShield" marks.  This concession constitutes a judicial admission that

precludes HCF from contesting this issue.  *Go Medical Industries Pty, Ltd. v.*

*Inmed Corp.*, 300 F. Supp. 2d 1297, 1315 (N.D. Ga. 2003).  However, the

defendants have not met their burden of showing that there is no genuine

dispute of material fact regarding their counterclaims.  The court concludes

that there is a genuine issue for trial on the remaining elements of the

defendants' trademark infringement counterclaims, e.g., whether there is a

protectable trademark interest and continuous commercial use.  Accordingly,

the court denies the defendants' motion for summary judgment on its

infringement counterclaims.

### 7. Damage Computation

DCO and Etowah's motion for summary judgment includes an

additional argument that HCF cannot recover damages due to its failure to

disclose a computation of damages.  Federal Rule of Civil Procedure

26(a)(1)(A)(iii) states that a party must provide a computation of each

category of damages claimed by the disclosing party.  The court concludes

that HCF complied with this requirement in its supplemental initial

disclosures [Doc. No. 21].  Therefore, the court denies DCO and Etowah's

request for summary judgment on this issue.

## IV.   Conclusion

The court GRANTS HCF's motion to amend the amended complaint

[Doc. No. 272]; the claims identified in the motion are dismissed with

prejudice.  The court DENIES HCF's motion to exclude expert testimony of

Donald A. Irwin [Doc. No. 216].  The court DENIES the defendants' motion to

exclude the testimony of Michael Norton [Doc. No. 281].  The court DENIES

HCF's motion for partial summary judgment [Doc. No. 278], GRANTS IN

PART and DENIES IN PART CCA's motion for summary judgment [Doc.

No. 279], and GRANTS IN PART and DENIES IN PART DCO and Etowah's

motion for summary judgment [Doc. No. 280].  The following claims remain

for trial:[8]

- HCF's claim for federal trademark infringement of the Healthier

  Choice® mark.

- HCF's state law dilution claim for the defendants' use of the phrase

  "make the healthier choice."

---

[8] The court does not include attorney's fees and expenses in the list of claims
that remain for trial.  Attorney's fees and expenses are prayers for relief and
not substantive claims.  This ruling does not preclude the parties from
seeking attorney's fees and expenses as a form of relief.

- HCF's false advertising claim related to the defendants' use of the phrase "98% moisture resistant . . . to block spills."

- The defendants' counterclaim for a declaratory judgment of non-infringement.

- The defendants' counterclaim for a declaratory judgment of no dilution.

- The defendants' counterclaim for federal trademark infringement.

- The defendants' counterclaim for common law trademark infringement.

- The defendants' counterclaim for fraud on the PTO.

The parties are directed to file their joint proposed pretrial order within 30 days of the date of this order.

**SO ORDERED** this  31st  day of March, 2014.

 /s/Charles A. Pannell, Jr.
CHARLES A. PANNELL, JR.
United States District Judge